## COUNTY OF WASHINGTON, AUGUST TERM, 1854, AT SOUTH KINGSTON.

---

PRESENT:

HON. WILLIAM R. STAPLES, CHIEF JUSTICE.
HON. GEORGE A. BRAYTON, } JUSTICES.
HON. ALFRED BOSWORTH, }

---

## BENJAMIN SMITH *v.* ANNE J. SMITH & others.

Under the statute of descents in Rhode Island, degrees of kindred are to be reckoned by the canons directing the course of descent, as positive rules establishing such degrees.

The clause of that statute, directing that an ancestral estate, in the absence of children of the intestate, "shall go to the kin next to the intestate of the blood of the person from whom such estate came or descended, if any there be," is in the nature of a proviso to the canons of the statute, and degrees of kindred under the clause are to be reckoned according to the canons.

The colonial statutes of descent and distribution of Rhode Island considered, and held to be consistent with this construction.

L. S. died intestate without issue, leaving an estate which came to her by descent from a deceased brother; *held*, that the same passed in equal shares to her mother, brothers, and sisters, they being, by the rule established by the statute, of the same degree of kindred to the intestate.

ACTION OF PARTITION brought by the plaintiff against his mother, and the widow and daughter of a deceased brother, for

partition of two tracts of land in North Kingston, which he claimed to hold by descent and conveyance in common and undivided with them. The facts submitted to the court by consent, and out of which the question arose were these: Thomas Smith, of whose estate the premises originally were, died intestate, leaving five children, to whom his estate passed by descent, Benjamin, the plaintiff; John, since dead, and whose widow and daughter, Anne J., are defendants; Lucy, the wife of Green Lillibridge, and Alfred and Lydia, and a widow Deborah, the other defendant. Alfred died intestate, and without issue, shortly after his father; whereby Benjamin, John, Lucy, and Lydia, his brothers and sisters, became entitled to and inherited his portion of his father's estate. Lydia next died intestate and without issue; and the question submitted to the court was, whether Benjamin as a brother, and as purchaser of the share of Lucy, a sister, and Anne J., as daughter and representative of John, a deceased brother of Lydia, were entitled to share with Deborah, the mother of Lydia, that portion of Lydia's estate which she inherited from her brother Alfred, as equally near in kindred to Lydia as her mother, or whether the mother, as she claimed, was entitled to the whole of it as " the kin next to," that is, nearest of kin to, her intestate daughter.

*E. R. Potter,* for Deborah the widow, contended that the ancestral clause of the acts of 1822 and 1844 was the same substantially, and was to be construed as the like provision in the act of 1798; and argued from a comparison of the colonial acts of descent of 1718 and 1770 with that of 1798, that kindred, under the ancestral clause of the statute of 1822, and of the present statute, was to be reckoned according to the civil law, as under the English statute of distributions, (22 & 23 Car. II. ch. 10,) introduced into the colony of Rhode Island by an act passed in Feb. 7, 1749–50. By this mode of computation, the mother would be next of kin to her daughter; the act of 1 James II., amending the statute of Charles, never having been introduced here. The clause of this statute which puts brothers and sisters upon the same footing with the mother, applies only to estates acquired by purchase, and not to estates coming to the intestate by descent. He cited as illustrative of his position

the summary of the laws of descent in the different states, in 3 Greenleaf's Cruise Dig. 352.   Also, *Collins v. Gardner*, 2 Peters, 65, 86, 87; *Mowry*, et ux. v. *Staples*, 1 R. I. Rep. 10; 1 Swift's Digest, 285, 294.

*W. H. Potter* for Anne J. Smith, cited *Gardner* v. *Collins*, 3 Mason, 398; *Dexter* v. *Dexter*, 4 Mason, 302; 3 Foster, (N. H.) 207.

BRAYTON, J.   The question raised in this case is whether the mother is entitled to the whole of the estate which her deceased daughter inherited from her brother Alfred, or is entitled to a share only with her other children, the brothers and sisters of the deceased.

This depends upon the construction to be put upon the statute directing the descent of intestate estates contained in the digest of 1822, p. 222–3, which enacts—

" That henceforth when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred in the following course:—

" To his or her children or their descendants, if any there be :

" If there be no children nor their descendants then to the father of such intestate :

" If there be no father, then to the mother, brothers, and sisters of such intestate and their descendants or such of them as there be :

" If there be no mother nor brothers nor sisters, nor their descendants, the inheritance shall go in equal moieties to the paternal and maternal kindred each in the following course :

" First to the grandfather :

" If there be no grandfather then to the grandmother, uncles, and aunts on the same side and their descendants or such of them as there be :   And so on.

" The descendants of any person deceased shall inherit the estate which such person would have inherited had such person survived the intestate.

" When the title to any real estate of inheritance as to which the person having such title shall die intestate, came by descent, gift, or devise from the parent or other kindred of the intestate,

and such intestate die without children, such estate shall go to the kin next to the intestate, of the blood of the person from whom such estate came or descended, if any there be."

This last clause is that under which the plaintiff claims; and her counsel contend that this clause is to be treated as a distinct and independent provision of the act, directing the descent of such estates of the intestate as have not been acquired by himself,—that the first clauses of this section relate only to estates acquired by the intestate, and are intended to direct the descent of such estates only,—that the course of descent was intended by the legislature to be different in the one case from the course of descent in the other,—that the term " next of kin," in the last clause, is to be taken in the strict sense of those terms as understood by civilians, as connected by blood in the nearest degree, —that it does not refer to, nor is it governed by the classes and degrees expressed in the first clause, as this would require an interpolation of words; and that if the legislature had so intended they would have used other language, and have said, those not of the blood of the person from whom the estate came should be excluded.

All these provisions are contained in one and the same section of the same act. They all relate to the same subject-matter, the descent of intestate estates, and must be all construed together.    All parts of this section are to be given effect to, if it may reasonably be, and we are from a view of the whole to gather the intent of the legislature.   That they did not intend the last clause as to ancestral estates as a distinct provision, independent of the course of descent before directed and uncontrolled by it, is sufficiently apparent from a view of all these provisions. The table of descent in the former clauses, provides apparently for all cases of intestate estates.   The direction is general, that all estates of *inheritance* shall pass in the order there settled. No express exception is any where made, and none can fairly be implied from any expression in this entire table of descents. We should not expect after reading this, to meet in the same act, and still less in the same section of the act, with any thing implying that any real estate of inheritance of any description had been omitted.   The terms used in the first clause

are broad enough to cover every estate of inheritance. They are, "or when any person having title to *any estate* of inheritance," and, "it shall descend and pass," as there provided. There is no distinction as to the mode in which the title is acquired, but all and every estate of inheritance is included. And when we come to the last clause, our first impression is that it is designed as a limitation upon the rules preceding, and intended to restrict their application as to ancestral estates there mentioned to individual kindred of the degrees stated in the first clause who shall be of the blood of the person from whom the estate came. Had the words, "provided, however," been inserted in the commencement of the clause, no one would doubt that such was the intent. There is no less doubt that this provision was intended as a proviso to the former clause.

But if there could be doubt upon this point, there is another consideration which renders it quite clear that the general table of descents in the first clause was intended to and does include ancestral estates as well as estates acquired by the intestate. The last clause provides for the descent of the ancestral estates of such intestates only as die without children. If they die, leaving children, and estates which came by descent, no direction is there given to whom they shall pass. If such a case is not provided for in the first clause, under the provision that the estate of inheritance of every intestate shall pass, first "to his or her children or their descendants, if any there be," it clearly is not in the statutes at all. Yet we must believe that the legislature intended to provide rules of descent for all cases.

The third section of the same act shows very clearly that the legislature understood that they had in the first clause provided for all cases, and especially for this case. The third section provides for the partition of the real estate of intestates by the court of probate upon the application of all persons interested, and that it shall be divided "amongst the several persons entitled to the same by virtue of this act," referring to this first section as one system or scheme of descents, and provides, that the commissioners appointed to make partition shall divide the estate "into shares in the manner and proportion hereinbefore prescribed for the descent of such estates," referring again to

the first section as a rule to guide the commissioners in all cases. The proviso to this section is much stronger and more pointed. It is this : " If any of the *children or grandchildren* of the intestate shall have received from the person whose estate is to be divided, any real or personal estate for his advancement or settlement, the same shall be taken into consideration, and be deducted from their shares in such estate." This proviso certainly assumes that in every case where the intestate dies seized of any estate of inheritance, it shall descend to his children or their descendants, if any such there be, without regard to the fact that it came to the intestate by deed of purchase, or by devise or descent. The legislature clearly assume that the first section and the first clause of that section has provided for the descent of ancestral estate, and that it shall descend, *first* to the children and their descendants, and in default, to the father, and in default of that, to the mother, brothers, and sisters and their descendants.

But again, there is no conceivable reason for fixing rules of descent or establishing degrees of relationship for the purposes of descent for ancestral estates, different from those applicable to estates acquired by the intestate, and none is suggested in the whole act, except that the estate should not pass from the blood of the person from whom the estate came so long as any of that blood remains. It is quite sufficient to carry out that intent to treat this clause as a proviso to the rules of descent before established, excluding from the inheritance of such estates all those who are not of the blood of the person from whom the estate came, and giving the estate to all those standing in the degrees stated who have any of that blood. We think it too plain a matter to hesitate in deciding, that the proper construction of this section is, that it provides rules for the descent of all estates of inheritance, whether the title accrue by devise or descent, or by contract and purchase ; that it fixes and prescribes the degrees of kindred for the purposes of descent, establishing by those degrees who are next of kin, or kin next to the intestate, or which is the same thing, nearest of kin to him for the purpose of inheriting ; placing the children in the first or nearest degree, the father in the next degree, and the mother,

Smith *v.* Smith & others.

brothers, and sisters, all and equally, in the third degree of kin or kindred to the intestate; and that the clause as to ancestral estates confines the inheritance to such of the kindred standing in those degrees as are of the blood of the person from whom the estate came, and excluding those who are not of that blood. Upon this construction the mother in the case before us stands in the same degree of kindred for all the purposes of the act with brothers and sisters of the intestate, and they are all equally of kin within the meaning of this section. As such next of kin the mother is entitled to share in the land in question equally with the brother and sisters, and is entitled to no greater portion.

The counsel for the plaintiff has referred us to the prior statutes of the colony and state, and to the history of the statutes upon the subject of descent and distribution for the purpose of showing that the terms used in this statute, " the kin next to the intestate," are to be taken in their strict literal sense, and as meaning the one nearest connected with the intestate by blood, and he insists that it is made evident from the prior acts that in this instance the terms were intended to be applied to ancestral estates. The statutes to which we are referred are, the statute of 1718, for the descent of real estate and the distribution of the personal; the statute of 1749, introducing into this colony the statute of 22 & 23 Chas. III., called the statute of distributions; the statute of 1770, for the descent of real estate; and the statute of 1798, for the descent of real and the distribution of personal estate.

Though we do not deem it necessary to go into the history of the legislation upon this subject, since this statute, as all others are, is mainly to be construed by its own provisions, if those provisions are clear; yet, from the stress which the counsel lays upon this consideration, we have examined those statutes. Upon an examination of them and inquiry into the history of the legislation upon this subject, we find nothing to lead us to a different conclusion from that to which we are forced by the provisions of the act itself. It may be well to remark in starting that the terms, " next of kin," or " kin next," or " nearest of kin," have never in any system of law in any country, been

applied to the law of succession in the strict sense which the counsel now claims for them. They have not in the construction of the statute of distributions in England. They have been controlled by the policy or settled maxims of the law. In England, brothers and sisters have been preferred to grandfather or grandmother, though strictly in the same degree. The mother cannot succeed with the father, though in the same degree. So in Scotland, by the general rule, the estate is to go to the next of kin, but the mother is excluded though nearest of kin. So it was by the civil law itself. By the ancient civil law, the mother was entirely excluded, and where there was no brother nor sister, the estate passed to the grandfather. By the modern civil law, in the Novels of Justinian, the mother, though nearer in degree in the strict sense, shared with her children, the brother and sister of the intestate, and with the father also, if he were living.

The act of 1718 appears to have been the first colonial act which directed the descent of real estate. It provided also for the distribution of the personalty. This act provided for the dower of the widow, and gave her also one third of the personalty, after payment of the debts; that the residue of the estate, real and personal, should go to all the children—to the eldest son two shares, and to every other child one share; if no children, then to the next of kin, or to such of them as should, within a time limited, make claim, such as resided within any New England colony, within one year, all others, within three years. Very little light can be gathered from this statute, unless we can determine what construction was put upon it while it was in force. It was repealed in 1728, as "tending to destroy inheritances." Did the mother under it inherit or succeed to the personalty, to the exclusion of brothers and sisters, or was she put upon the same footing with them as heirs or distributees?

Prior to the passage of this act, viz: in 1700, a statute had been passed, providing "that in all actions, matters, causes, and things whatsoever, where no particular law of the colony is made to decide and determine the same, that then, and in all such cases the laws of England shall be put in force, to issue, determine, and decide the same, any usage, custom, or law to the contrary hereof notwithstanding."

The next in order of the colonial statutes is the act of 1749, declaring that certain English statutes, naming them, " be and the same are hereby introduced into the colony, and shall be enforced therein until the general assembly otherwise order." This act was passed upon the report of a committee appointed to " prepare a bill for introducing into the colony such of the statutes of England as are agreeable to the constitution." The report of that committee is embodied in the act as a preamble to it, and commences : " We, the subscribers, being appointed to report what statutes of Great Britain are, and ought to be in force in this colony, do report " " the following statutes " and among others, " the statute of the twenty-second and twenty-third of Charles the Second, chap. 10, for distributing the estates of intestates," and concludes, " all which statutes we are humbly of opinion have *heretofore been,* and still ought to be, in force in this colony." It seems to have been understood that the statutes reported had been, before the act, in force, and the act expressly enacting that they shall be in force, seems rather a declaratory act made for the purpose of removing all doubt upon the subject, than for the purpose of now putting those statutes in force for the first time. By embodying the report, and the opinion of the committee that they were already in force, the legislature assume that the opinion of the committee was correct, and that these statutes had been in use here.

It was objected by the counsel, as to the statute of distributions, that since the act of 1749 and the report describe it as " the statute 22 & 23 Charles II., chap. 10," and do not expressly notice the amendment made thereto by the statute 1st of James II., that amendment was not intended to be, and was not, introduced in 1749. The amendment of 1 James II. was this : " If, after the death of the father, any of his children die intestate without wife or children, in the lifetime of the mother, every brother and sister, and their representatives, shall have an equal share with the mother." · And the argument of the counsel is further, that as this amendment was not introduced, the intent of the legislature must have been to exclude brothers and sisters, and to give the estate wholly to the mother, and to this end to use the words " next of kin " in their strict

sense, as it had been adjudged upon the statute of distributions, prior to this amendment. It must be remembered that the act of Charles II. was not originally made perpetual, but was limited to the term of seven years; that in the twenty-ninth year of that reign it was amended by a declaratory act, saving the right of the husband to administer without account upon the estate of his wife, and the act continued for the further term of seven years; that it was only made perpetual by the act of 1 James II. c. 3, § 17, by which act the amendment above recited was introduced, and that it is only by virtue of this act of 1 James that the statute of distributions was then or now is in force in England. It must be remembered also that the legislature were not at this time enacting the provisions of any expired English statute, but were simply introducing, or more properly declaring, what statutes then in force in Great Britain should be in force here. It is not to be presumed that they intended to introduce part of an act without distinguishing what part. On the contrary, we must presume an intent to introduce and put in force the statutes referred to, and with them the statute of distributions as it then existed, and was in force in England. The act of 22 & 23 Charles II. as such had expired by its own limitation, and "the statute for distributing the estates of intestates" was in force only by the statute of James which amended it. All the provisions of the statutes of distribution, as then in force in England, were put in force here by the act of 1749, and so continued in force down to the digest of 1798.

The next statute in the order of time referred to is that of 1770. This act related only to the descent of real estate, and contained substantially the same provisions as the repealed act of 1718. All the children were admitted to the inheritance, the eldest son having two shares, the other children one each; and in case there were no children, the estate was to descend and go to the "next of kin of the intestate," in equal shares, representation in collaterals to be *per stirpes* and to the whole blood. This continued to be the law as to realty down to the digest of 1798.

In 1798, these two statutes, the statute of distributions as to personal and the act of 1770 as to real estate, were moulded

into one act, which was designed at the same time to regulate the descent of real estate and the distribution of the personal by one uniform rule as to both. This act provides, that where there are no children, the estate shall vest in and be equally divided between the next of kin in equal degree and those who represent them, and provides, that the degrees shall be computed according to the rules of the civil law. The statute of 1770 had placed all real estates on the same footing, whether the intestate were or were not the first purchaser, thereby repealing the rule of the common law, and regarding in the descent the blood of the intestate only, and not of the person from whom the estate came. It was thought necessary to prescribe the rules for ascertaining the degrees, probably to exclude all question which might grow out of considerations derived from the common law, and more especially to exclude the rules of the canon law, which the common law had adopted as to inheritances; and in prescribing the rules of the civil law, it is evident that it was understood by the framers of this act, that its construction was to be governed by considerations derived from the civil law, and that the construction put upon the statute of distributions was mainly to be followed.

Burns, in his Ecclesiastical Law, p. 410, referring to the statute of distributions, says: " When these important statutes do not reach every case, great respect is paid in England to the first three chapters of the 118th novel of Justinian, because these contain the latest improvement of the civil law and because the English statutes on the subject of distribution are understood to have been modelled in great part upon those chapters of the *jus novissimum* of the civil law." In requiring the rules of the civil law to be followed, our statute of 1798 necessarily required the construction of the English statute to be kept in view; and since the statute of distributions was now in effect repealed, and with it the amendment of 1 James II., in order to guard against any such construction as had been put upon the original act of Charles II., giving the inheritance to the mother in exclusion of brothers and sisters, it was expressly provided in the act of 1798, "that if any of the children of the intestate shall die without issue, in the lifetime of the mother, every brother and

sister shall inherit equally with the mother." This, it will be seen, is precisely the provision introduced by the amendment of 1 James II. This amendment was evidently designed not to vary the original intent of the statute of Charles, but to remedy the construction put upon it by the court, since that construction widely departed from those rules of the civil law after which the act was understood to have been modelled. All this, we think, indicates the intent of the legislature to follow essentially the construction of the English statute of distributions as it then existed, or at least, as it was in 1749, and to limit it only as to ancestral estates, and as to those, no farther than was necessary to exclude those who were not of the blood of the person from whom the estate came.

Upon the revision of the statutes in 1822, the same intent evidently existed to prescribe a course of descent generally for all inheritances, and then to limit it to those standing in that course of descent who are of the blood of the person from whom the estate came, and excluding all others. This act provides that the estate shall descend and pass to his or her *kindred,* in the following course, &c. It prescribes the relationship in which persons shall stand to the intestate to be entitled to succeed,—the degrees of kindred for the purposes of descent,—or who shall be deemed next of kindred in order to inherit. It prescribes the order in which the kindred shall be successively admitted to the inheritance, and this it does independently of the rules of the common, of the canon, and of the civil law. It places the children in the first degree of kin; the father is placed in the next, or second degree; and in the third degree are placed the mother, brothers, and sisters, who, as being in the same degree, are to inherit equally; in the next degree is the grandfather, and in the fifth degree are placed grandmother, uncles, and aunts. In all cases, it gives to the mother a share only with her children. If the legislature had designed to prescribe a canon of descent so plain and distinct that the common mind might see at a glance the course of descent, and to leave as little as possible to construction, the course here prescribed is precisely such as would be most likely to carry out the purpose. If this last clause be treated as a proviso only, this intent is

fully accomplished, since this excludes all resort to considerations of the common law, of the canon law, and of the civil law. If it be not so treated, then there must arise a multiplicity of questions. Whether the canon law or the civil law shall prevail, and, if the civil law, whether it shall be the earlier or the later civil law; whether representation shall be admitted; whether the father and mother, being in same absolute degree of kindred, may inherit together, and whether representation of either can be allowed. All these, and many more are opened the moment we make this clause a distinct, independent provision; and all these are shut out forever, by holding, as was the clear intent, that it is a proviso merely, pointing to the degrees of kindred prescribed by the act itself.

Upon the whole, therefore, whether we regard the statute by itself, and construe it by its own provisions, or whether we look at the prior statutes upon the same subject, we are led to the same conclusion, viz : that upon the proper construction of this act, whether the estate be ancestral or otherwise, the mother is entitled only to a share with the brothers and sisters of the intestate, if any, and cannot exclude them.

*Judgment for partition entered accordingly.*